IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN CONSOLINO, | ) | |
| | ) | |
| Plaintiff, | ) | 14 CV 5526 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| BRIAN TOWNE, THOMAS DART, | ) | |
| and ROBERT EGAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carmen Consolino, an employee of the Cook County Sheriff's Office, filed suit against Thomas Dart, Brian Towne, and Robert Egan in their individual capacities. The only remaining count in Consolino's complaint asserts a First Amendment retaliation claim against all Defendants pursuant to 42 U.S.C. § 1983. Defendants filed a motion for summary judgment [70]. For the reasons provided below, the Court grants the motion.

**Factual Background**

Defendant Thomas Dart is the Cook County Sheriff. *See* Defs.' LR 56.1 ¶ 4, ECF No. 71. Defendant Brian Towne was his Chief of Staff at the time the events in this case took place. *See id.* Defendant Robert Egan is the Compliance Officer at the Cook County Sheriff's Office and oversees and monitors employment actions within the Sheriff's Office. *See id.* ¶ 5.

Plaintiff Carmen Consolino was employed by the Sheriff's office and worked at the Cook County Department of Corrections. *See id.* ¶ 1. In 1998, Consolino

started working at the Boot Camp, an alternative sentencing program that offers military discipline structure, education, and counseling for nonviolent offender inmates. *See id.* ¶ 2.

Consolino's wife, Jennifer Trzos, who also worked at the Boot Camp, filed a *Shakman* complaint, which was presented to an arbitrator.[1] *See* Defs.' LR 56.1 ¶ 59; Pl.'s Resp. LR 56.1 ¶ 59(1), ECF No. 84 (disputing Defendants' paragraph 59 on other grounds). At the hearing, Consolino was a witness called by his wife's attorney. *See* Shakman Hr'g Day 2 at 7:13–24, Pl.'s Ex. 29, ECF No. 87.

At around the same time of the *Shakman* hearing, Consolino was told by a friend of his at the FBI of a potential opening for a position on an FBI Task Force. *See* Defs.' LR 56.1 ¶¶ 20–21. Occasionally, employees from the Cook County Sheriff's Office are assigned to FBI Task Forces. In those instances, the County continues to pay the employee's salary and, in return, the Sheriff's Office benefits by having the employee acquire new skills. *See id.* ¶¶ 9, 15. There is no written procedure for assigning an employee of the Sheriff's Office to an FBI Task Force. *See* Pl.'s LR 56.1(b)(3)(C) ¶ 29, ECF No. 86; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) ¶ 29, ECF No. 105. Instead, the FBI typically would send a written communication to the Sheriff's Office requesting a candidate or a list of candidates to serve on a Task

---

[1] Under the *Shakman* Decree, the Sheriff of Cook County is prohibited from making hiring decisions based on any political reason. *See* Amended Supplemental Relief Order for the Sheriff of Cook County at 1, *Shakman v. Democratic Org. of Cook Cty.*, No. 69-cv-2145, (N.D. Ill. May 21, 2009), ECF No. 1200. An applicant or employee that believes he or she has been a victim of unlawful political discrimination can seek relief through arbitration. *See id.* at 25–29.

Force. The FBI would then conduct a background check to determine whether it will accept the employee. *See* Defs.' LR 56.1 ¶ 6.[2]

In Consolino's case, his friend at the FBI, Special Agent Davis Christy, spoke with a supervisor at the FBI about the possibility Consolino joining the Task Force. *See* Defs.' LR 56.1 ¶ 28. The supervisor told Ricardo Pagan, the head of the FBI's Human Intelligence Branch in Chicago, that Consolino was approved by Cook County and Sheriff Dart to join the Task Force. *See id.* ¶ 29. Based on that mistaken belief, the FBI sent a letter to the Sheriff's Office specifically requesting Consolino. *See id.* ¶ 34.

When the Sheriff's Office took no action after the letter was sent, Consolino took advantage of a visit by Dart to the Boot Camp to ask him about the status of the request. *See id.* ¶ 36. Dart told him to talk to his supervisor. *See id.*

A few weeks after his conversation with Dart, Consolino tried a different approach. He contacted Egan in the hopes of getting more information about how to proceed. *See id.* ¶ 39. Egan spoke with Joseph Ways—a Sheriff's Office employee who used to work at the FBI—who contacted Pagan at the FBI to inquire about the request. During the conversation between Ways and Pagan, the truth about Consolino's lack of approval from the Sheriff's Office came to light. *See id.* ¶ 42. At this point, the story becomes unclear. Ways came away from the conversation with the understanding that, because Consolino did not have the Sheriff's approval, the FBI rescinded the offer. *See id.* ¶ 45. Pagan's recollection was not so unequivocal.

---

[2] Consolino disputes this description of the protocol. *See* Pl.'s Resp. LR 56.1 ¶¶ 6(1), 6(2–3).

3

Pagan says he told Ways that Consolino had not followed protocol and that, if Consolino was resubmitted as a candidate, the FBI would consider him. *See* Pl.'s Resp. LR 56.1 ¶ 45. Regardless of what exactly was said during that conversation, Ways went back to Egan and told him that the FBI had rescinded their offer because Consolino had failed to follow protocol. *See* Defs.' LR 56.1 ¶ 47. Egan passed the message along to Consolino. *See id.* ¶ 48.

Consolino then sent an email to Dart and Towne explaining that, since his conversation with Egan, he had checked with the FBI and the request had not been rescinded. Consolino requested clarification. *See* Email to Dart & Towne, Pl.'s Ex. 20.

After a few more months without a response, Consolino filed a complaint with the Office of Professional Review (OPR), the organization that investigates complaints against employees of the Sheriff's Office. *See* Defs.' LR 56.1 ¶ 52. The complaint alleged that the Sheriff's Office had failed to act on his assignment to the FBI because Consolino had testified at the *Shakman* hearing. *See* Complaint Register, Pl.'s Ex. 5 at Sheriff 309. Because the complaint was against Ways, who worked for OPR, and named Egan, who worked for the Compliance Office, as a witness, Consolino did not want either entity to perform the investigation. *See* Consolino Dep. at 55:8–19, Pl.'s Ex. 32; Complaint Register, Pl.'s Ex. 5 at Sheriff 309. The investigation was ultimately conducted by Cook County Assistant State's Attorney Maureen Hannon. *See* Defs.' LR 56.1 ¶ 57. Hannon concluded that the complaint was not well-founded and that there was no apparent link between

4

Consolino's testimony at the *Shakman* hearing and his not being assigned to the FBI Task Force. *See id.* ¶ 58.

Subsequent to that determination, Consolino was transferred from the Boot Camp to Division XI. *See id.* ¶ 78.

## **Legal Standard**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## **Analysis**

Consolino's complaint identifies two instances in which he faced retaliation for protected speech. First, he argues that he was denied an opportunity to serve on the FBI Task Force due to his testimony at his wife's *Shakman* arbitration hearing, which involved allegations of political favoritism in the Cook County Sheriff's Office.

5

Consolino also contends that, because of the grievance he filed, he was transferred from the Boot Camp to Division XI.

To make out a prima facie case of retaliation, Consolino must show that "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter speech; and (3) his speech was at least a motivating factor in the employer's actions." *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). The burden on causation, the third element, then shifts to the defendant to rebut with evidence that the speech was not a but-for cause of the defendant's actions. *See id.*

Liability under § 1983 requires that the defendant be personally involved in the constitutional deprivation. *See Vance v. Peters*, 97 F.3d 987, 992–93 (7th Cir. 1996). There is no repondeat superior liability under § 1983; to be liable, the defendant must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. *See id.* at 993.

### A.  FBI Task Force and the *Shakman* Hearing

Turning first to Consolino's retaliation claim based on his testimony at the *Shakman* hearing, Defendants argue that Consolino has not carried his burden of showing that his testimony was a motivating factor when he was not assigned to the FBI. *See* Defs.' Mem. Supp. SJ at 6–7, ECF No. 73. In particular, Defendants highlight the lack of any evidence that Towne or Dart knew about Consolino's testimony at the *Shakman* hearing. As to Egan, Defendants argue that there is no evidence that he was personally involved in the deprivation alleged in this case.

6

Both Towne and Dart deny knowing that Consolino had testified at his wife's *Shakman* hearing. *See* Defs.' LR 56.1 ¶¶ 63, 65.[3] In response, Consolino contends that these facts are disputed. The problem for Consolino is that he supports that contention by citing his own declaration in which he essentially argues that Towne and Dart must have known. *See* Pl.'s Resp. LR 56.1 ¶¶ 63(3), 65(1). Neither Dart nor Towne testified at the *Shakman* hearing. Consolino has produced no documents or internal memoranda mentioning the arbitration that could have put either Dart or Towne on notice about the hearing. Moreover, even if such a document existed, Consolino's wife—the claimant—has a different last name than Consolino. So, without more, it would not have been obvious that the arbitration concerned Consolino in any way.

Despite the lack of any evidence on the issue, Consolino's declaration baldly asserts: "A reasonable person would expect that the Sheriff would know the cases in which he has been accused of a [Shakman] violation." *See* Consolino Decl. ¶ 17, Pl.'s Ex. 1. Consolino's statement is nothing more than speculation. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be

---

[3] Defendants' Local Rule 56.1 paragraph 65, which includes Towne's denial of any knowledge about Consolino's *Shakman* testimony, cites Towne's deposition for support. Consolino has filed a motion to strike Towne's declaration under the sham-affidavit doctrine. *See* Pl.'s Mot. Strike, ECF No. 88; Pl.'s Mem. Supp. Mot. Strike, ECF No. 89. Under that doctrine, statements in an affidavit that contradict earlier deposition testimony are entitled to zero weight in summary judgment proceedings. *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571 (7th Cir. 2015). Because the statement at issue here—Towne's lack of knowledge about Consolino's testimony at the *Shakman* hearing—does not contradict any portion of Towne's deposition, the doctrine is inapplicable. The Court thus denies the motion [88] as to paragraph 10. Because this is the only portion of Towne's declaration that the Court relies on in this opinion, the remainder of motion is stricken as moot.

made on personal knowledge . . . ."). This type of speculation is not sufficient at the summary judgment stage to carry Consolino's burden on causation. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1108 (7th Cir. 2012) ("[T]he plaintiffs must produce evidence that a retaliatory motive actually influenced the decision-maker, not merely that it could have; our favor toward the nonmoving party on summary judgment 'does not extend to drawing inferences that are supported by only speculation or conjecture.'" (citation omitted)).

Consolino also relies on an email in which he purportedly tells Dart and Towne about testifying at the *Shakman* hearing. *See* Pl.'s Resp. LR 56.1 ¶¶ 63(3), 65(1). After growing impatient at the impasse regarding the request for him to join the FBI Task Force, Consolino sent an email to Towne and Dart inquiring into the status of the request. *See* Email to Dart & Towne, Pl.'s Ex. 20.[4] Consolino contends that the email "explained that he (Consolino) had testified in a Shakman case." *See* Pl.'s Resp. LR 56.1 ¶ 65(1). Although the email does make a reference to *Shakman*, it is not about Consolino's testimony. What it says is that, in trying to determine the status of the request, he had asked Egan whether there was a violation of the Employment Manual or the *Shakman* Decree that was holding up the process. *See* Email to Dart & Towne. No rational jury could conclude that the email was referencing Consolino's testimony at his wife's *Shakman* arbitration.

---

[4] Each time Consolino references this email, he cites Exhibit 8 of his summary judgment document. *See* Pl.'s Resp. LR 56.1 ¶¶ 63(3), 65(1). Exhibit 8, however, contains email correspondence among FBI employees discussing what to do with Consolino's credentials. *See* Pl.'s Ex. 8. The Court will assume he is referencing Exhibit 20, which contains a May 25, 2012, email to Dart and Towne.

8

Finally, specifically as to Towne, Consolino testified that he heard about a conversation in which Towne had said about him: "F*** that guy. He got in the Sheriff's face." *See* Consolino Dep. at 47:5–13, Pl.'s Ex. 32. Although that may show that Towne did not like Consolino, it does nothing to prove that Towne knew about Consolino's testimony at the hearing. In fact, Consolino himself points out that the statement was made in reference to the conversation that he had with Dart during Dart's visit to the Boot Camp. *See id.* at 50:4–11.

Absent evidence that Towne or Dart knew about the protected speech, Consolino cannot show that his testimony was the cause of the deprivation he suffered. *See Morfin v. City of East Chi.*, 349 F.3d 989, 1005–06 (7th Cir. 2003); *Stagman v. Ryan*, 176 F.3d 986, 1004 (7th Cir. 1999).

Turning to Defendant Egan, Defendants argue that Egan was not personally involved in deciding whether Consolino's transfer to the FBI would be approved. *See Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). In response, Consolino contends that Egan's involvement stems from his failure to remedy the situation once he became aware of it. *See* Pl.'s Resp. Mot. SJ at 3, ECF No. 85. The Sheriff's Employment Action Manual (SEAM) lists Egan's job responsibilities as "taking appropriate steps to evaluate, eliminate, remedy and report instances of Unlawful Political Discrimination in conjunction with OPR." *See* SEAM at 4, Pl.'s Ex. 22. Thus, Consolino argues, once he complained about his political discrimination, Egan should have remedied the situation by ensuring that he got on the FBI Task Force.

Egan first became involved with the FBI request when Consolino approached him for help in resolving the matter. *See* Defs.' LR 56.1 ¶ 39. Egan contacted Joseph Ways, another employee at Sheriff's Office, who talked with the FBI about the request. *See id.* ¶¶ 40–41.[5] Ways then reported back to Egan that the request had been rescinded. *See id.* ¶ 47. (Consolino disputes that the request had been rescinded, but does not contradict the fact that Ways told Egan that the FBI was no longer requesting Consolino.) At that point, Egan relayed the message about the request being rescinded back to Consolino, and his involvement ended. *See id.* ¶ 48. Consolino then filed a complaint with OPR and specifically requested that Egan and the Compliance Office not be involved in the investigation of his complaint. *See* Consolino Dep. at 55:13–17 ("The contingency plan was to have the Compliance Department do the investigation. I didn't want that either because Robert Egan was involved. And when I requested to have—I wanted somebody outside to investigate it.").

Based on the record before the Court, there is no evidence that Egan was personally involved in depriving Consolino of serving on the FBI Task Force. Before the OPR complaint was filed, Egan merely served as a messenger between Ways and Consolino. There is no indication that Egan was in a position to do anything on Consolino's behalf after he was told that the FBI's offer had been rescinded. Once the OPR complaint was filed, Egan was not involved at Consolino's own request.

---

[5] Although Consolino disputes other aspects of paragraphs 40 and 41, he does not disagree that Egan talked with Ways and that Ways then contacted the FBI. *See* Pl.'s Resp. LR 56.1 ¶¶ 40, 41(1).

Thus, the vague accusation that Egan should have done more to remedy the situation is incongruent with the undisputed facts in this case. Without more, Consolino cannot show that Egan had sufficient personal involvement in the deprivation to hold him liable for retaliation. *See Hildebrandt*, 347 F.3d at 1040.

The Court thus grants Defendants' motion as to Consolino's retaliation claim based on his failed appointment to the FBI Task Force.

### B. OPR Complaint and the Transfer to Division XI

Consolino contends that his transfer from the Boot Camp to Division XI was in retaliation for having filed the OPR complaint. *See* Compl. ¶ 30, ECF No. 1. The problem for Consolino's second claim of retaliation is that there is no evidence that any of the Defendants were personally involved in the decision to transfer him to Division XI.

The only basis Consolino has for believing that Towne and Dart played a part in his transfer is that they are in positions of power—Dart as Sheriff, and Towne as his right-hand man. *See* Defs.' LR 56.1 ¶¶ 72–73; Pl.'s Resp. LR 56.1 ¶¶ 72–73. But for either Towne or Dart to be liable for retaliation under § 1983, Consolino must present evidence that they were the ones that made the decision to transfer him. *See Hildbrandt*, 347 F.3d at 1040; *Vance*, 97 F.3d at 993. Because Consolino has not presented evidence that Towne or Dart facilitated, approved, or condoned the transfer to Division XI, his claim of retaliation against them fails.

The same is true of Egan. The only evidence Consolino cites to support his argument that Egan was personally involved in his transfer is the fact that Egan had a motive—Consolino had named Egan in the OPR complaint. *See* Pl.'s Resp. LR

11

56.1 ¶ 75(3). Yet without evidence that Egan actually played some part in getting Consolino transferred, the alleged motive is insufficient to establish personal involvement.

Therefore, the Court grants Defendants' motion with regard to Consolino's retaliation claim based on his transfer from the Boot Camp to Division XI.

## **Conclusion**

For the reasons stated herein, the Court grants Defendants' motion for summary judgment [70]. The Court denies motion Consolino's motion to strike [88] as to paragraph 10 of Towne's declaration, strikes the remainder of the motion as moot, and denies the request for attorney's fees.

Civil case terminated.

**IT IS SO ORDERED.**                                    **ENTERED  9/26/16**

　

　

_____

**John Z. Lee
United States District Judge**